UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CHARLES E. BATES, | ) | NO. CV 06-3893-MAN |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of the | ) | |
| Social Security Administration, | ) | |
| Defendant. | ) | |

Plaintiff filed a Complaint on June 26, 2006, seeking review of the denial by the Social Security Commissioner ("Commissioner")[1] of Plaintiff's claims for disability income benefits ("DIB") and supplemental security income ("SSI").  On July 28, 2006, the parties consented to proceed before the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c).  The parties filed a Joint Stipulation on March 16, 2007, in which:  Plaintiff seeks an order reversing the Commissioner's decision and directing the payment of

---

[1]  Michael J. Astrue became the Commissioner of the Social Security Administration on February 12, 2007, and is substituted in place of former Commissioner Joanne B. Barnhart as the Defendant in this action.  (See Fed. R. Civ. P. 25(d)(1); Section 205(g) of the Social Security Act, last sentence, 42 U.S.C. § 405(g).)

benefits or, alternatively, remanding the case for a new hearing; and Defendant requests that the Commissioner's decision be affirmed.  The Court has taken the parties' Joint Stipulation under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff filed his applications for DIB and SSI payments on July 26, 2004.  (Administrative Record ("A.R.") 12, 48-51, 311-14.) Plaintiff claims to have been disabled since January 1, 2004, due to diabetes, low back pain, and heart problems.  (A.R. 13, 23.)  He also claims an inability to work due to hypertension, high cholesterol, joint pains, sleep apnea, rectal bleeding, chest pain, gout, and leg pain. (A.R. 12, 107.)  At the Administrative Hearing, Plaintiff amended his alleged onset date to September 1, 2002.  (A.R. 13, 319.)  He has past relevant work experience as a warehouse worker and janitor.  (A.R. 13, 72, 320.)

The Commissioner denied Plaintiff's claim for benefits initially and upon reconsideration.  On November 30, 2005, Plaintiff, who was represented by counsel, testified at a hearing before Administrative Law Judge Mary L. Everstine ("ALJ").  (A.R. 316-31.)  On March 7, 2006, the ALJ denied Plaintiff's claim for DIB and SSI, and the Appeals Council subsequently denied Plaintiff's request for review of the ALJ's decision.  (A.R. 12-21, 4-6.)

///
///
///

### SUMMARY OF ADMINISTRATIVE DECISION

In her March 7, 2006 written decision, the ALJ found that Plaintiff has not engaged in substantial gainful activity during the period at issue. (A.R. 14.)  The ALJ found that Plaintiff has severe impairments consisting of diabetes mellitus, hypertension, history of gout, and L4-5 spondylosis, but that Plaintiff does not have an impairment or combination of impairments listed in, or medically equal to an impairment listed in, Appendix 1, Subpart P, Regulation No. 4. (*Id.*) In addition, the ALJ found that Plaintiff was a "younger individual" (20 C.F.R. §§ 404.1563 and 416.963), with a limited education. (A.R. 18.) Further, the ALJ found that Plaintiff's descriptions of his symptoms and limitations were inconsistent and not credible. (A.R. 16-17.)

In setting forth Plaintiff's residual functional capacity, the ALJ found that Plaintiff was limited to work at the "light" exertional level.[2] (A.R. 18.)  Based on this residual functional capacity, the ALJ found that Plaintiff was unable to perform his past relevant work. (*Id.*)  Relying on Medical-Vocational Guideline Rule 202.17, the ALJ found that Plaintiff could perform work in the national economy.[3] (A.R. 19.)  Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security act during the time period at

---

[2]    "Light work" involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. §§ 404.1567(b), 416.967(b).

[3]    Rule 202.17 directs that a person who is a "younger individual," with limited education, and is unskilled, is not disabled. 20 C.F.R. Pt. 220, App. 2.

issue.  (*Id.*)

## STANDARD OF REVIEW

This Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence.  <u>Smolen v. Chater</u>, 80 F.3d 1273, 1279 (9th Cir. 1996).  The Commissioner's decision must stand if it is supported by substantial evidence and applies the appropriate legal standards.  <u>Saelee v. Chater</u>, 94 F.3d 520, 521 (9th Cir. 1996).  Substantial evidence is "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  <u>Moncada v. Chater</u>, 60 F.3d 521, 523 (9th Cir. 1995).

Although this Court cannot substitute its discretion for that of the Commissioner, this Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion."  <u>Desrosiers v. Sec'y. of Health and Human Serv.</u>, 846 F.2d 573, 576 (9th Cir. 1988); *see also* <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."  <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039-40 (9th Cir. 1995).  This Court must uphold the Commissioner's decision if it is supported by substantial evidence and free from legal error, even when the record reasonably supports more than one rational interpretation of the evidence.  *Id.* at 1041; *see also* <u>Morgan v. Comm'r. of the Soc. Sec. Admin.</u>, 169 F.3d 595, 599 (9th Cir. 1999); <u>Flaten v. Secretary</u>, 44 F.3d 1453, 1457 (9th Cir. 1995).

4

**DISCUSSION**

Plaintiff alleges that the ALJ did not properly assess Plaintiff's physical impairments, in particular, the pain and neuropathy in his left lower extremity, which caused him to require a cane to walk. (Joint Stipulation ("J.S.") at 3.)

**A.   The ALJ's Failure To Consider The Medical Evidence Of Record Constitutes Error.**

In assessing a claimant's residual functional capacity, an ALJ may rely upon the opinions of examining physicians as substantial evidence when they are properly supported by the medical evidence. Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001)(consultative examiner's opinion constituted substantial evidence, because it relied on an independent examination of the claimant); see also Morgan, 169 F.3d at 600 (nonexamining, testifying medical expert opinions "may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it").

Generally, a treating physician's opinion is given greater weight because "'he is employed to cure and has a greater opportunity to know and observe the patient as an individual.'" Magallanes v. Brown, 881 F.2d 747, 751 (9th Cir. 1989)(citation omitted). When the opinion of a treating physician is contradicted, it may be rejected by the ALJ only for "specific and legitimate" reasons, based on substantial evidence in the record. Id.; Widmark v. Barnhart, 454 F.3d 1063, 1066-67 (9th Cir. 2006); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995)(same, and

5

1  further stating that "clear and convincing" reasons are required to
2  reject a treating physician's opinion that is uncontradicted).

4       Further, in cases where the claimant's condition is progressively
5  deteriorating, the most recent medical records are the most probative.
6  Stone v. Heckler, 761 F.2d 530, 532 (9th Cir. 1985)(holding that earlier
7  medical evaluations do not constitute substantial evidence for rejecting
8  treating physician's subsequent and more current opinion, when
9  claimant's condition is degenerative); Magallanes, 881 F.2d at 755
10 ("Where a claimant's condition becomes progressively worse, medical
11 reports from an early phase of the disease are likely to be less
12 probative than later reports").

14      Plaintiff was first diagnosed with diabetes in September 2003,
15 following treatments for multiple back abscesses. (J.S. at 3; A.R. 87-
16 88, 236.)  Plaintiff was prescribed a cane by his treating physician,
17 Dr. Dale Yu, in March 2004, due to pain in his lower left leg.  Dr. Yu
18 noted that Plaintiff "needs cane to help him ambulate." (A.R. 194.)  In
19 July 2004, Plaintiff was examined for lower left leg pain, and he was
20 diagnosed with diabetic neuropathy, for which he was prescribed
21 Neurontin. (A.R. 77-78.)  At that time, Dr. Yu completed a Disability
22 Statement, stating that Plaintiff was disabled for more than a year due
23 to diabetic neuropathy and untreated obstructive sleep apnea. (A.R.
24 77.)  Dr. Yu's July 2004 treatment notes support this assessment. (A.R.
25 78.)  However, the Disability Statement completed by Dr. Yu gives no
26 specific information as to Plaintiff's work capabilities and
27 limitations. (A.R. 77.)

28

6

Plaintiff contends that the ALJ failed to properly assess his medical condition, in particular, the pain and neuropathy in Plaintiff's lower left leg, which causes him to require the use of a cane to walk. (J.S. at 3.) Plaintiff also asserts that the ALJ incorrectly rejected the findings and treatment notes of Dr. Yu in favor of the findings of a one-time consultative examiner, Dr. Seung Ha Lim. (J.S. at 5.) Plaintiff argues that, because the objective findings of Dr. Yu were not fully and properly considered, the ALJ incorrectly determined that the Plaintiff was not disabled and was capable of light exertional work. (J.S. at 3.)

Dr. Lim's consultative examination of Plaintiff took place in September 2004.[4] Dr. Lim concluded that, despite Plaintiff's slow gait and use of a cane to ambulate, his decreased range of motion was due to "poor effort." (A.R. 107-12.) Dr. Lim found no evidence of diabetic neuropathy, and he further opined that Bates "does not require any assistive devices for ambulation." (A.R. 12.)

It is not clear what records of Plaintiff's treatment were provided to Dr. Lim in connection with his evaluation of Plaintiff. Dr. Lim makes a boilerplate statement that: "All submitted medical records were reviewed by this examiner"; he does not specify, however, the records provided to him or make any mention of such records in his report. (A.R. 107-112.) Thus, it is impossible to determine whether Dr. Lim based his assessment on a sufficiently complete picture of Plaintiff's

---

[4]    The ALJ also reviewed the report of an additional, earlier consultative examination which occurred on December 22, 2003. (A.R. 15.)   Dr. Mark Borigini's report of this examination has not been included in the record and, therefore, cannot be evaluated.

condition, giving due consideration to all relevant medical evidence of record then available.[5]  *See* 20 C.F.R. §§ 404.1517, 416.917 ("[i]f we arrange for [a consultative] examination or test, . . . [w]e will also give the examiner any necessary background information about your condition"); <u>Nalley v. Apfel</u>, 100 F. Supp. 2d 947, 953 (S.D. Iowa 2000)("when a claimant is sent to a doctor for a consultative examination, all the available medical records should be reviewed by the examiner").  As a result, the Court cannot confirm whether Dr. Lim's opinion constitutes proper and substantial evidence on which the ALJ may base his assessment of the extent of Plaintiff's medical impairments and related residual functional capacity finding.

In rejecting the treating physician's opinion, the ALJ stated:

I cannot give controlling weight to [Dr. Yu's] opinion. Although the doctor stated that the claimant is "disabled," it is not clear that he was familiar with the definition of "disability" contained in the Social Security Act and regulations.  His opinion is not supported by objective findings in the medical evidence of record including his own treatment notes and he has not expressed his opinion in work-related terms.  He based this opinion on complaints from the claimant on that very date.  Subsequent evidence reveals no evidence of diabetic neuropathy (and no evidence that the

---

[5]     Of course, Dr. Lim did not have records of Plaintiff's medical treatment from October 2004, to October 2005, which were created after Dr. Lim's September 2004 report was rendered; those additional records are discussed below.

claimant has continued taking Neurontin – see Exhibit 5E [6])
and there is no evidence of continuing problems due to sleep
apnea.    Finally, whether the claimant is "disabled" is a
decision reserved to the Commissioner (SSR 96-5p).

(A.R. 15.)

    The ALJ failed to take into account, however, additional, material
medical records that were submitted following the Administrative
Hearing.  These medical reports fall within the relevant time period and
are contained in the Administrative Record.  Nonetheless, they are not
addressed in the ALJ's decision.[7]  These records reflect, among other
things, six doctor's visits (A.R. 127-34, 136, 154-56) and a hospital
stay (A.R. 138-53) by Plaintiff during the period from November 2004,
through the end of October 2005.  During this time, Plaintiff's
condition apparently worsened, and his prescribed dosage of Neurontin
was increased.  (A.R. 127, 130, 134, 155.)

    Dr. Yu's treatment notes during the period from November 2004,
through October 2005, bear directly on Plaintiff's medical condition and

_____

    [6]    The ALJ appears to refer here to an undated list of
medications, written by Plaintiff.  (A.R. 73.)  There is another undated
list of medications also written by Plaintiff (A.R. 71), which indicates
that he was taking daily doses of Gabapentin, a generic name for
Neurontin.

    [7]    The records were requested on November 29, 2005, *i.e.*, one day
before the Administrative Hearing (A.R. 126) and are included in the
record as Exhibit 5F (A.R. 126-310).  The record shows that these
medical records were received on January 18, 2006, at least a month and
a half before the ALJ's March 2006 decision was rendered.  (A.R. 126.)
They are not referenced, let alone discussed, anywhere in the ALJ's
decision.

his residual functional capacity.  These additional treatment notes contain material evidence regarding, among other health issues, Plaintiff's worsening lower left leg pain.  This evidence casts doubt on the continued accuracy of Dr. Lim's consultative evaluation of Plaintiff's condition and capabilities in September 2004.  (A.R. 127, 130, 134, 155.)  As a result, the ALJ's reliance on the consultative examiner's assessment, without taking into consideration the treatment records made available after the hearing, constitutes error.

The ALJ's failure to consider relevant medical evidence in the record constitutes error requiring reversal.  Before Plaintiff's residual functional capacity can be properly assessed, there must be full and appropriate consideration of all medical evidence of record. If, upon remand, the ALJ finds that Dr. Yu's treatment notes are insufficient to resolve any remaining questions regarding Plaintiff's disability, then Dr. Yu should be contacted and asked to respond to questions and/or another consultative examination may be ordered.  20 C.F.R. §§ 404.1517, 416.917 (when a claimant's medical sources provide insufficient evidence to determine whether the claimant is disabled, a consultative examination may be ordered); see also Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002)(requirement in 20 C.F.R. § 416.912(e) that the Commissioner re-contact treating sources is triggered when the information from the treating sources is inadequate to make a determination regarding disability).

**B.   Remand Is Required.**

Here, remand is appropriate to allow the ALJ the opportunity to

correct his failure to consider relevant medical evidence of record. *See* <u>Benecke v. Barnhart</u>, 379 F.3d 587, 593 (9th Cir. 2004)(where ALJ erred by discounting treating physicians' opinions, remand for further proceedings is appropriate if enhancement of the record would be useful); <u>Higbee v. Sullivan</u>, 975 F.2d 558, 561-62 (9th Cir. 1991)(remanding case in order to develop the record); <u>McAllister v. Sullivan</u>, 888 F.2d 599, 603 (9th Cir. 1989)(remand appropriate to remedy defects in the record). After full consideration of the relevant medical evidence, Plaintiff's residual functional capacity should be re-addressed.

**CONCLUSION**

Accordingly, for the reasons stated above, the denial of benefits is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order. Judgment shall be entered reversing the decision of the Commissioner, and remanding the matter for further administrative action consistent with this Memorandum Opinion and Order.

///
///
///
///
///
///
///
//
///

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: February 13, 2008

<pre>
                                      /s/
                            MARGARET A. NAGLE
                   UNITED STATES MAGISTRATE JUDGE
</pre>